IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | |
| CATHEDRAL HENDERSON, | * | |
| Defendant. | * | 1:15-cr-72 |

# O R D E R

On June 3, 2016, a jury convicted Defendant Cathedral Henderson of fifty counts of making false statements relating to healthcare matters in violation of 18 U.S.C. § 1035 and one count of making a false statement to a federal agency in violation of 18 U.S.C. § 1001. (Doc. 95.) At the close of the Government's case, Defendant moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. (Trial Transcript, Doc. 109 at 509-601.) The Court denied his motion. (Id. at 608-09.) Defendant now renews his motion for judgment of acquittal and moves for a new trial in the alternative. (Doc. 106.)

## I. MOTION FOR JUDGMENT OF ACQUITTAL

**A. Legal Standard**

A motion for acquittal should be granted only "if the evidence is insufficient to sustain a conviction" of the offense charged. Fed. R. Crim. P. 29(a). In considering a Rule 29 motion for judgment of acquittal, the trial court is required to determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987). The verdict must stand if there is substantial evidence to support it, that is, "unless no trier of fact could have found guilt beyond a reasonable doubt." United States v. Pinero, 389 F.3d 1359, 1367 (11th Cir. 2005).

## B. Analysis

### 1. Counts One through Fifty - 18 U.S.C. § 1035

To prove false statements in relation to health care matters, the Government must show:

- First, that the defendant falsified, concealed, or covered up by any trick, scheme, or device a material fact; or that the defendant made a materially false, fictitious, or fraudulent statement or representation; or that the defendant made or used a materially false writing or document while knowing the writing or document contained a materially false, fictitious, or fraudulent statement or entry;

- Second, in connection with the delivery of or payment for healthcare benefits, items, or services involving a healthcare benefit program; and

- Third, that the defendant did so knowingly and willfully.

See 18 U.S.C. § 1035. The parties agreed that only the mens rea element was disputed at trial. (Trial Transcript, Doc. 109 at 598:13-15; id. at 317:15-318:5.) Defendant's renewed motion does not specify whether he only challenges the sufficiency of the mens rea evidence; however, based on the arguments Defendant puts forward, which are similar to those made during the trial, the Court interprets Defendant's motion to only challenge the sufficiency of evidence of mens rea.[1]

---

[1] To the extent that Defendant's motion now challenges the other elements of Counts One through Fifty, sufficient evidence was introduced at trial to demonstrate each element. (See generally Trial Transcript, Doc. 109 at 604:22-606:2 (summarizing the evidence concerning the elements of falsity, Defendant's knowledge of the falsity, materiality, and the necessary connection between the false statement and healthcare matters)).

3

As mentioned above, at trial the Government had to prove that Defendant acted knowingly and willfully. There was no evidence that Defendant's actions were the result of a mistake or were coerced by another. Accordingly, the Government satisfied the "knowingly" requirement.

With respect to the "willfully" requirement, the Government introduced evidence that Defendant knew the proper method by which to close consults. In particular, the Government introduced sample consults that Defendant previously closed that included detailed comments explaining his decision to either discontinue or close the consult. For instance, one of Defendant's consult-discontinuing comments read:

> Talked with Dr. Clay and explained that the vet lives in Myrtle Beach, South Carolina, and Charleston VA has a CBOC in Myrtle Beach, South Carolina to accommodate the vet's eye needs. The vet will need to be instructed to go through Charleston VA for ophthalmology care in Myrtle Beach area. Vet had ophthalmology appointment in Aiken, South Carolina, but vet declined.

(Trial Transcript, Doc. 109 at 547:13-19; Gov.'s Ex. 107.) In another discontinued consult, Defendant commented that "Patient received an ortho pre-eval lab at GRU on August 2013. Ortho surgery appointment has been canceled at GRU. Patient is being scheduled for ortho surgery at VA with Dr. Young currently. VA authorized pre-eval in 2013." (Trial Transcript, Doc. 109 at 550:10-15; Gov.'s Ex. 111.) The Government, therefore,

4

demonstrated that Henderson knew the difference between the proper method of closing consults and the false statements used in the comments for the charged counts.

Defendant also knew that improperly using the medical records could constitute a federal offense. Evidence demonstrated that a sign-on screen that employees view each time they access the Computerized Patient Record System (CPRS) informs the user that the misuse of the system is a crime. (Trial Transcript, Doc. 109 at 485:3-8.) Specifically, that warning provided, in pertinent part, that "[a]ccess is granted to this system for OFFICIAL PURPOSES ONLY. UNAUTHORIZED ACCESS OR MISUSE OF THIS SYSTEM IS A FEDERAL CRIME." (Gov.'s Ex. 79.) Evidence also demonstrated that Henderson viewed these notices in his capacity as chief of the fee-basis division. (Trial Transcript, Doc. 109 at 483:21-486:-11.)

Based on these findings, the Court concludes that viewing this evidence in the light most favorable to the Government, the Government presented sufficient evidence that a rational trier of fact could find Henderson guilty beyond a reasonable doubt on Counts One through Fifty.

### 2. Count 51 - 18 U.S.C. § 1001

Henderson also argues that the evidence was insufficient to support a conviction under 18 U.S.C. § 1001(a)(2). The Court disagrees. Henderson's motion challenges whether the Government

introduced sufficient evidence that his statements to the Government's investigators were false. In Henderson's view, when speaking with government investigators, he only said that he "believed" he instructed the revenue clerks to add comments that the consults were closed at the instruction of Chief of Health Administrate Services Maribeth Bredehoft, and, when asked if that was the entirety of his instructions, he stated that he "believed" it was.

Contrary to Henderson's view, in the interview, Henderson states that his directions to the revenue clerks were "[t]o administratively close the consult by chief of fee. That's the statement. That's all." (Trial Transcript, Doc. 109 at 527:3-6.) In response, Special Agent Brumfield asked Henderson whether the revenue clerks were instructed to put any other comments into CPRS, to which Henderson replies "No, not that I remember. No." (Id. at 527:7-9.) Evidence showed that Henderson's actual instruction to the revenue clerks was to type "service has been completed or patient refused services." (Trial Transcript, Doc. 109 at 156:21-25; Gov.'s Ex. 3.)

In the light most favorable to the Government, on this record, the Government presented sufficient evidence that a rational trier of fact could find Henderson guilty beyond a reasonable doubt on Count Fifty-one.

The Court, therefore, **DENIES** Henderson's motion for judgment of acquittal on Counts One through Fifty-one.

6

## II. MOTION FOR NEW TRIAL

### A. Legal Standard

A motion for a new trial must be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A court can set aside a verdict and grant a new trial if it concludes that "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985) (citation omitted). Motions for new trial based on the weight of the evidence are not favored; the Eleventh Circuit directs that courts cautiously and sparingly grant them only in "really exceptional cases." Id. at 1313.

### B. Analysis

Henderson moves for a new trial on all Counts. With respect to Counts One through Fifty, Henderson repeats his argument—unsuccessful at trial—that Ms. Bredehoft's orders allegedly violated VA policy that required medical personnel to close consults. Henderson points to Ms. Bredehoft's email instructing him to close out the consult list because "services were rendered, documentation along with claim received, and bill processed, consult. That is the bottom line." (Trial Transcript, Doc. 109 at 228:13-15; 280:10-12.) To Henderson, this email is evidence that he was reluctantly following Ms. Bredehoft's instructions after voicing his own objections to the

7

consult-close-out process, and, therefore, lacks the requisite mens rea on Counts One through Fifty. For Count Fifty One, Henderson argues that a new trial is warranted because the interview itself indicates Henderson only "believed" his instruction to the revenue clerks was to close the consults by the Chief of Administrative Services.

From the Court's review of the record and from its own recollection of the evidence presented at trial, the Court determines that Henderson fails to demonstrate that the evidence does not heavily preponderate against the jury's guilty verdict on Counts One through Fifty-One. The Court, therefore, **DENIES** Henderson's motion for a new trial.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of August, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA